NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LEWIS I. HAGAN, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 06-4491 (JAG) |
|  | : **OPINION** |
| GRACE ROGERS, et al., | : |
| Defendants. | : |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion to dismiss the Complaint by defendants Grace Rogers ("Rogers"), George Hayman ("Hayman"), Ronald Cathel ("Cathel"), Zulima Farber ("Farber"), Edward Sullivan ("Sullivan"), Robert Heaney ("Heaney"), Jerome Brown ("Brown"), Bernard Goodwin ("Goodwin"), and Joseph D'Amico ("D'Amico," and, collectively with Rogers, Hayman, Cathel, Farber, Sullivan, Heaney, Brown, and Goodwin, the "Moving Defendants"), pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted, and, alternatively, for summary judgment, pursuant to FED. R. CIV. P. 56. For the reasons set forth below, Moving Defendants' motion to dismiss will be granted, in part, and denied, in part. This Court shall not consider Moving Defendants' motion as one for summary judgment.

# I. BACKGROUND

Pro se plaintiff Lewis Hagan ("Plaintiff") was a prisoner at the Adult Diagnostic & Treatment Center ("ADTC") in Avenel, New Jersey. (Compl. at 3.) While incarcerated, Plaintiff alleges that Moving Defendants exposed him to environmental tobacco smoke ("ETS") and prisoners with contagious diseases, and were deliberately indifferent to his medical needs. (Id. at 4-5, 7-9.) Plaintiff also alleges that his right to access the courts was violated by officers who read his legal mail and altered the price of his outgoing mail, causing his legal mail to be delivered in an untimely fashion. (Id. at 6-7, 9.) Plaintiff claims that Moving Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments, as well as "1997(e)e, New Jersey's Clean Air Act N.J.S.A. 26.3D 55-63 [sic] and 28 U.S.C. § 1915(g)." (Id. at 2.)

## A. ETS Exposure Allegations

Upon his arrival at ADTC, Plaintiff alerted prison officials that he has indoor and outdoor allergies, including allergies to cigarette smoke. (Id. at 7.) Although his regular doctor prescribed "flonasue [sic]" for his allergies, Plaintiff states he was treated with "bendaryl [sic]." (Id.) Despite his announcement of these allergies, Plaintiff alleges that his fellow inmates, as well as the Department of Corrections staff, smoked in his presence, exposing him to "involuntary inhalations of tobacco smoke." (Id. at 5.)

Plaintiff alleges that cigarettes contain "more than 4,600 chemical substances including cyanide, arsenic, formaldehyde, methane, propane, carbon monoxide and ammonia." (Id. at 5.) "Some of these substances are higher in secondhand smoke," according to Plaintiff. (Id.) Plaintiff claims that exposure to these substances was "exacerbating [his] current respiratory ailment[, causing] severe headaches, changing of [his] voice[,] lots of mucus, with dust and lint,

watery eyes, [and] uncontrollable coughing[,] which at times [made his] back hurt." (Id. at 8.)

Despite these detrimental effects, Plaintiff claims that ADTC officials ignored his requests for a smoke-free environment. (Id. at 4, 7-8.) On or about August 20, 2006, Plaintiff filled out an inmate remedy form "in reference to [his] suffering from the cigarette smoke and the serious effect that it was having on [his] current health problems." (Id. at 8.) On this form, he questioned "why the cigarettes were being sold on [sic] commissary and a profit being made at the expense of [his] health." (Id.)

On or about August 22, 2006, Plaintiff met with Dr. Hochberg, who prescribed "[F]lonase" for his allergies. (Id.) According to Plaintiff, Dr. Hochberg "stated that his request for an air quality test was denied by . . . [ADTC Administrator] Rogers and that he would be talking to her in regards to the smoking issue." (Id. at 5.)

On August 31, 2006, Plaintiff submitted a "NHRP 2.03 request for a smoke-free environment on unit 8 left in accordance with state law." (Id. at 9.) Plaintiff claims that this request was ignored by Rogers and other ADTC officials. (Id. at 4-5, 9.)

On or about September 7, 2006, Plaintiff went "to medical on a sick call." (Id. at 9.) Plaintiff explained to the nurse that he had been experiencing acid reflux for the past two weeks, "due to the smoking on [sic] the unit and especially in the bathrooms." (Id.) He also complained that the smoke gave him "really bad headaches as well as aggravating [sic] [his] back injury." (Id.)

After this "sick call," Plaintiff was "still forced to suffer from the cigarette and cigar smoke . . . as well as the dust in the ventilation shafts and no circulation of air." (Id. at 8.) Plaintiff claims he "has 13 smokers alone in [his] dorm, and that's counting the smokers in B

3

dorm (15 smokers) C dorm (12 smokers) and D dorm (13 smokers) . . . ," who each smoke "anywhere from 2 packs a day." (Id. at 8.) Plaintiff alleges that "this is exacerbating [his] current respiratory ailment." (Id.)

**B.     Allegations Related To Mail**

    1.     Opening Legal Mail

On May 13, 2006, Plaintiff wrote a letter to Rogers about his legal mail being opened outside of his presence. (Id. at 6.) On May 16, 2006, Plaintiff met with Sullivan, a correctional officer. (Id. at 5-6.) Plaintiff told Sullivan that his mail had been opened ever since he arrived at ADTC, and that it may have been copied as well. (Id.) Plaintiff claims that Sullivan informed him that he was correct, and that mail was no longer to be opened outside of a prisoner's presence. (Id.)

On July 12, 2006, Plaintiff met with the "classification committee," which was headed by Goodwin, the Assistant Administrator of ADTC, and which included Heaney, a correctional officer. (Id.) At this time, Plaintiff voiced his concerns about his mail being opened outside of his presence and "how [he] had not received some legal mail from [his] counsel which was time sensitive to [his] case which is under appeal . . . ." (Id.) Plaintiff claims that Goodwin was familiar with Plaintiff's claims, but directed Plaintiff to discuss these claims with Sullivan. (Id. at 7.)

On August 13, 2006, Plaintiff filled out a grievance form about his mail concerns. (Id.) On August 22, 2006, Plaintiff was called to the mail room to meet with Brown, a correctional officer, who informed Plaintiff that the policy of opening legal mail was still in effect, due to orders from the Governor and the Attorney General, and that all prisons continued to open mail

4

outside the presence of prisoners. (Id. at 7.)

      2.      Altering the Price of Outgoing Mail

On July 7, 2006, Plaintiff "wrote [a letter] to the mail room officer to inquire as to why the prices were being change[d] on [his] outgoing mail." (Id. at 9.) On or about July 22, 2006, Plaintiff met with Goodwin, who stated that the complaints in Plaintiff's letter were confusing. (Id.) Plaintiff then explained that the mail room was increasing the prices on his outgoing mail and taking extra money out of his account, without notifying him. (Id.) Plaintiff stated that, "since they were changing the price to a priority mail fee of $4.05 then they need to change my reason [sic] of 1st class postage to Priority mail. This way none of my adversaries can keep going back to the judge saying that they received the mailings late . . . ." (Id. at 9-10.) Goodwin said that he would check into Plaintiff's complaints in the future. (Id. at 10.)

On August 12, 2006, Goodwin met with Plaintiff to inform him "[t]hat the mail room has said that [Plaintiff is] trying to get over on pricing . . . ." (Id.) Plaintiff expressed again his complaints, and showed Goodwin "three of [his] remits that shown [sic] the over charges [sic]." (Id.) Plaintiff "also wrote a remedy form on or about August 10 to receive back the remits that [Goodwin] took as well as a response[,] and to credit [his] account for the over charges [sic] that [Plaintiff could] account for . . . ." (Id.)

"[O]n August 28 and 29, 2006, [Plaintiff] received back [his] outgoing legal mail in retaliation indicating that [his] prices where [sic] wrong for 1 and 2 once [sic] mailings." (Id.) Plaintiff also alleges that, in February of 2005, his "outgoing mail has be [sic] tampered with and never left the building to Federal Court." (Id. at 10.) He also states that, "on more than one occasion, [his] mail has left here extremely late caus[ing] me to loose [sic] the outcome of a

5

portion of my case and pushing back my motion dates." (Id.)

### C.  Exposure to Contagious Diseases

On August 20, 2006, Plaintiff filled out a remedy form complaining that he was housed with William Weiss, an inmate with "full blow [sic] aid [sic] which is a contagious disease." (Id. at 8.) According to Plaintiff, Weiss occasionally had bloody tissues falling out of his clothing, coughs heavily, and does not wear the mask he is supposed to wear. (Id.) Plaintiff "learned from Michael Jones inmate no. 587016B that numerous complaints had already been written and that administration knows the concerns of the inmates but have continued to do nothing about it." (Id.) Plaintiff also alleges that he was housed with inmates who have scabies.[1] (Id. at 5.)

### D.  Deliberate Indifference To Medical Needs

On July 12, 2006, Plaintiff voiced concerns to the classification committee that he had not received "booths [sp] and sneakers" for his back pain. (Id. at 6.) On August 22, 2006, Plaintiff met with Dr. Hochberg and again voiced his concerns that he needed "booths [sp] and sneakers" to alleviate his chronic back problems. (Id. at 7.) Plaintiff claims that Goodwin, the medical department, and the property room manager were "giving [him] the run around," and that he was "left to continue to suffer from the chronic back pain which the booths [sp] and sneakers would help ease . . . ." (Id. at 9.)

### E.  The Complaint

Plaintiff initiated the instant action on September 19, 2006, alleging violations of his rights under "42 U.S.C. § 1983, the First Amendment, Eighth Amendment, Fifth Amendment,

---

[1] Scabies is "a contagious disease caused by *Sarcoptes scabiei*, the human itch mite, characterized by intense itching of the skin and excoriation from scratching." MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 1537 (6th ed. 2002).

Fourteenth Amendment, 1997(e)e, violation of New Jersey's Clean Air Act N.J.S.A. 26.3D 55-63 [sic] and 28 U.S.C. § 1915(g)." Specifically, Plaintiff made the following claims against Moving Defendants: (1) Rogers, the Administrator of ADTC, ignored Plaintiff's request for a smoke-free environment, is aware of all of the constitutional violations, and continues to allow them to occur (id. at 5); (2) Goodwin, the Assistant Administrator of ADTC, disregarded Plaintiff's medical concerns and his complaints regarding opened and improperly priced mail, and continually backed ADTC's unconstitutional policies (Compl. Addendum at 1-2); (3) Hayman, the Commissioner of New Jersey prisons, was made aware of Plaintiff's problems and had the power to intercede, but instead refused to step forward and take control of the situation (id. at 1); (4) Sullivan, a correctional officer, met with Plaintiff on one occasion, knew that Plaintiff's mail was being opened outside of his presence, and said he would speak to Rogers about the problem, but did not follow through on this promise (id. at 2); (5) Cathel, the New Jersey State Prison Administrator, was made aware of Plaintiff's problem with legal mail and had the power to address the problem, yet refused to act upon it (id. at 1); (6) Brown, a correctional officer, met with Plaintiff once, informed him that the opening of inmates' legal mail outside of their presence remained sound policy, and directed mail room staff to continue to follow this policy (id. at 3); (7) Heaney, a correctional officer, was aware of Plaintiff's lack of medical "booths [sp] and sneakers," but refused to supply them (id. at 2); and (8) D'Amico, the commissary manager, was responsible for processing the orders of tobacco products which aggravated Plaintiff's ailments (id. at 3).

## II. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 127 S. Ct. at 1959. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id.

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). That is, a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1960 (abrogating Conley, 355 U.S. 41). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173

(3d Cir. 2000). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See W. Penn Power Co., 147 F.3d at 259; 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357. Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment. FED. R. CIV. P. 12(b).

The court's review of the sufficiency of a pro se complaint, "however inartfully pleaded," is less stringent than its review of pleadings prepared by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). A court must assume a pro se plaintiff's factual allegations are true and construe his claim liberally. See Nietzke v. Williams, 490 U.S. 319, 330 n.9 (1999); Roman v. Jeffes, 904 F.2d 192, 197 (3d Cir. 1990).

### III. ANALYSIS

After liberally construing the Complaint, this Court finds that Plaintiff has raised a Section 1983 claim for violation of his First, Fifth, Eighth, and Fourteenth Amendment rights. Plaintiff also alleges violations of the New Jersey Smoke Free Act (the "NJSFA") by Moving

Defendants.² Moving Defendants' arguments supporting dismissal of the aforementioned claims shall be analyzed seriatim.³

A. **Plaintiff's § 1983 Claims Against Moving Defendants in Their Official Capacities Are Barred by the Eleventh Amendment**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. This Amendment bars suits against any state, or its agencies, in federal court by that state's own citizens or citizens of other states. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); see also Kelley v. Edison Twp., No. 03-4817, 2006 U.S. Dist. LEXIS 23510, at *18 (D.N.J. Apr. 25, 2006) (citing Bennett v. City of Atl. City, 288 F. Supp. 2d 675, 679 (D.N.J. 2003) (stating that "[t]he breadth of state sovereign immunity protects not only states, but

---

² Plaintiff alleges a cause of action under the "New Jersey Clean Air Act N.J.S.A. 26.3D 55-63 [sic]." (Compl. 2.) However, New Jersey has no statute entitled the New Jersey Clean Air Act. Since the citation provided in the Complaint is that of the New Jersey Smoke Free Act, this Court shall construe the Complaint to allege a violation of the New Jersey Smoke Free Act.

³ As discovery has not yet been conducted, Moving Defendants' motion for summary judgment is premature. See Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007) The Third Circuit has stated that
> [i]t is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.' This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record. In this vein, the Supreme Court has explained that '[a]ny potential problem with . . . premature [summary judgment] motions can be adequately dealt with under *Rule 56(f)*.'"

Id. (emphasis in original) (internal citations omitted). Based on the Circuit's rationale, this Court will not address Moving Defendants' arguments for partial summary judgment, except where those arguments alternatively support a valid argument for dismissal under Rule 12(b)(6).

10

expands to protect entities and persons who can show that, even though the State is not the named defendant, the state is the real, substantial party in interest.").

The Supreme Court has held that a Section 1983 claim seeking damages against a state official in his official capacity must be dismissed because the real party at interest is the state and the state is not a "person" within the meaning of Section 1983. Will v. Mich. Dept. of State Police, 491 U.S. 58, 70-71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under 1983."). Claims against state officers, acting in their official capacity, are treated as suits against the state itself. See Kentucky v. Graham, 473 U.S. 159, 166 (1986); Brandon v. Holt, 469 U.S. 464, 471-72 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents."); Monell v. Dep't of Soc. Svcs., 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). State agencies and officials acting in their official capacities are routinely afforded Eleventh Amendment immunity. Buckhannon Bd. & Care Home, Inc., v. W. Va. Dept. of Health & Human Res., 532 U.S. 598, 609 (2001); Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 658 (3d Cir. 1989).

According to N.J. STAT. ANN. § 30:1B-2, the New Jersey Department of Corrections ("NJDOC") is a principal department of the state's executive branch. Courts have consistently extended sovereign immunity to NJDOC officials in Section 1983 actions. See, e.g., Casilla v. N.J. State Prison, No. 05-4590, 2006 WL 2534416, at *7 (D.N.J. Aug. 31, 2006) (finding Section 1983 claims against defendant in official capacity barred by the Eleventh Amendment).

This Court finds that Moving Defendants are entitled to sovereign immunity. Hayman,

11

Rogers, Cathel, Goodwin, Sullivan, Heaney, Brown, and D'Amico are all named in the Complaint in their official capacities as employees of the NJDOC. Farber, the former Attorney General of New Jersey, likewise should be afforded immunity under the Eleventh Amendment against the Section 1983 claims raised against her in her official capacity. See Ryerson v. New Jersey, No. 06-1214, 2007 WL 749813, at *6 (D.N.J. Mar. 7, 2007) (Greenaway, J.) (granting Eleventh Amendment immunity to Attorney General Zulima Farber against Plaintiff's Section 1983 claims).

Moving Defendants are entitled to Eleventh Amendment immunity, and Plaintiff's Section 1983 claims against them, in their official capacities, must be dismissed.[4]

**B.      Plaintiff Cannot Maintain a Section 1983 Claim Against Farber Based on the Respondeat Superior Theory**

Moving Defendants also argue that summary judgment should be granted in their favor for Plaintiff's Section 1983 claims because the claims rely on the theory of respondeat superior, and Moving Defendants did not have any personal involvement in the alleged wrongs. As explained *supra* in footnote 2 of this Opinion, Moving Defendants' motion for summary judgment is premature. This Court, therefore, shall consider only whether dismissal of Plaintiff's claim is appropriate under Moving Defendants' proffered argument.

Local government units and supervisors are not liable under Section 1983 solely on a theory of respondeat superior. See Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985);

---

[4] Since "[t]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983," however, Moving Defendants are not granted immunity with respect to the Section 1983 claims against Moving Defendants in their individual capacities. See Hafer v. Melo, 502 U.S. 21, 31 (1991).

Monell v. New York City Dept. of Soc. Svcs., 436 U.S. 658, 690-91, 694 (1978); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellaciprete, 845 F. 2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence." Id.; see also Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Moving Defendants argue that the Section 1983 claims should be dismissed because Plaintiff has not alleged any personal involvement by any of the parties. With respect to Farber, this Court agrees. Plaintiff has alleged no facts showing Farber's involvement in the alleged violation of Plaintiff's constitutional rights. All Section 1983 claims against Farber must be dismissed. However, the Complaint alleges personal involvement by each of the remaining Moving Defendants. Specifically, Plaintiff alleges that Hayman, Rogers, Cathel, Goodwin, Sullivan, Heaney, Brown, and D'Amico had knowledge of ongoing constitutional violations, and the power to remedy these violations. Plaintiff's Section 1983 claims raised against those Moving Defendants, in their individual capacities, shall not be dismissed.

C.  **Plaintiff Has Alleged Sufficient Facts to Support an Eighth Amendment Claim of ETS Exposure**

Moving Defendants next argue that Plaintiff's Eighth Amendment claim should be dismissed because Plaintiff cannot produce any evidence that he was exposed to unreasonably high levels of ETS, or that Moving Defendants acted with deliberate indifference to his health or safety. This Court finds that the Complaint alleges facts sufficient to support Plaintiff's Eighth

13

Amendment claim.

The Supreme Court has held that prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to an excessive level of ETS.  Helling v. McKinney, 509 U.S. 25, 35 (1993) ("We cannot rule at this juncture that it will be impossible for [plaintiff], on remand, to prove an Eighth Amendment violation based on exposure to ETS.").  A claim for violation of the Eighth Amendment may be based upon possible future harm to health, as well as present harm, arising from ETS exposure.  Id. at 33.

To obtain relief, a prisoner must satisfy a two-prong test.  The objective prong requires Plaintiff to show that the level of ETS to which he is exposed is unreasonably high, while the subjective prong requires Plaintiff to show that the prison officials have expressed "deliberate indifference" to the health risks associated with secondhand smoke.  Id. at 35-37.

1. Objective Prong

To determine whether a Plaintiff is being exposed to unreasonably high levels of ETS requires

> more than a scientific and statistical inquiry into the seriousness of the potential harm and likelihood that such injury to health will actually be caused by exposure to ETS.  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk.

Id. at 36 (emphasis in original).  "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate."  Id.

Moving Defendants argue that Plaintiff cannot satisfy the objective prong of Helling because there is no evidence to show that he was being exposed to unreasonably high levels of

14

ETS.  Further, they argue that there is a No-Smoking Policy at ADTC that is regularly enforced, and that inmates are issued disciplinary charges for smoking in prohibited locations.

Plaintiff presents allegations that may support a finding that he was exposed to unreasonably high levels of ETS.  Plaintiff states in the Complaint that there are at least fifty-three smokers in the various dorms, and that at times the smoke can be "so thick and hovering in the bathroom and on the ramp that [he] is forced to cover up [his] face, especially [his] nose and mouth." (Compl. 7.)  The poor air circulation compounds the effects of the cigarette smoke.  (Id. at 8.)  Plaintiff also alleges that the smoke exacerbates his respiratory ailment. (Id. at 8.)

Since consideration of Moving Defendants' summary judgment motion is not appropriate at this time, Plaintiff is not required at this stage of the litigation to present evidence that would entitle him to prevail.  Taking Plaintiff's allegations to be true, as is required at this juncture, this Court cannot conclude that Plaintiff is unable to satisfy the objective prong of the Helling test.

2.      Subjective Prong

Plaintiff has also alleged facts sufficient to satisfy the subjective prong of Helling.  "To prove deliberate indifference under the subjective component, an inmate must show that the defendant official knows that the inmate faces a substantial risk of serious harm, and disregards that risk by failing to take reasonable measures to abate it."  Edwards v. Samuels, No. 06-3758, 2007 WL 81884, at *7 (D.N.J. Jan 8, 2007) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  The deliberate indifference factor "should be determined in light of the prison authorities' current attitudes and conduct."  Helling, 509 U.S. at 36.  Although "the adoption of a smoking policy . . . will bear heavily on the inquiry into deliberate indifference," id. at 36, allegations of ignored requests for a non-smoking unit, together with knowledge of a prisoner's

medical condition, may satisfy the subjective prong of the Helling test.  See Edwards, 2007 WL 81884, at *7; Patel v. Warren, No. A-07-CA-760-SS, 2007 WL 2818056, at *7 (W.D. Tex. Sept. 26, 2007).

Moving Defendants contend that Plaintiff cannot satisfy the subjective prong of Helling because ADTC is a smoke-free institution, the staff enforces the provisions of the policy, and all of Plaintiff's grievances were promptly addressed and resolved.  This Court disagrees.

While the implementation of a no-smoking policy can indicate a lack of deliberate indifference, the existence of a policy is not dispositive.  See Edwards, 2007 WL 81884, at *7 (holding that Plaintiff's allegations that a prison's nonsmoking policy was not enforced and his repeated requests for a non-smoking unit were ignored could support a claim of deliberate indifference such that dismissal was not appropriate); Patel, 2007 WL 2818056, at *7 (holding that dismissal was inappropriate where plaintiff claimed defendants ignored non-smoking policy and refused Plaintiff's requests for non-smoking housing).

Here, Plaintiff alleges that, despite a no-smoking policy, he was exposed to excessive levels of ETS.  He asserts that Moving Defendants ignored his requests for a smoke-free environment, with full awareness of his respiratory problems.  This Court finds that Plaintiff has alleged facts sufficient to survive a motion to dismiss.

E.      **Plaintiff Has Alleged Facts Sufficient to Support a Fourteenth Amendment Claim, But Not a Fifth Amendment Claim**

Moving Defendants assert that Plaintiff's Section 1983 claims relying on the Fifth and the Fourteenth Amendments must fail because he has not alleged facts to support an equal protection claim.

Plaintiff cannot, as a matter of law, sustain a Section 1983 claim against Moving Defendants alleging violation of his Fifth Amendment rights. The Fifth Amendment restricts only federal government action. Nguyen v. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983). Since the Complaint does not allege claims against any federal actors, Plaintiff's Section 1983 claim for violation of the Fifth Amendment must be dismissed.

The analysis of Plaintiff's Fourteenth Amendment claim, however, is less straightforward. The Fourteenth Amendment of the Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV. Due process rights are divided into two areas: substantive due process, and procedural due process.

Substantive due process stipulates that "a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are arbitrary, irrational, or tainted by improper motive, or by means of government conduct so egregious that it shocks the conscience[.]" Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000) (internal citations and quotations omitted). "To prevail on a non-legislative substantive due process claim, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." Id. at 139-40.

Procedural due process, on the other hand, requires notice and a hearing to be given to any person that is deprived of a life, liberty, or property interest. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).

The Fourteenth Amendment also ensures that a person is not denied "equal protection of the laws." U.S. CONST. amend. XIV. The equal protection clause "does not require the state to

17

treat all persons alike." Price v. Cohen, 715 F.2d 87, 91 (3d Cir. 1983). "To establish a violation of the equal protection clause, a plaintiff must show that the allegedly offensive categorization invidiously discriminates against the disfavored group." Id.

Moving Defendants correctly point out that Plaintiff failed to allege membership in a class or category of individuals experiencing discrimination at the hands of Moving Defendants. Prisoners, generally speaking, do not inherently constitute a suspect classification, and state regulations of prisoners are deemed "presumptively constitutional." Myrie v. Comm'r, N.J. Dept. of Corr., 267 F.3d 251, 263 (3d Cir. 2001).[5] The Complaint focuses solely on the constitutional violations allegedly experienced by Plaintiff, and does not allege, expressly or impliedly, that the grievances occurred or endured due to Plaintiff's membership with a particular class of persons.

While Plaintiff has not alleged facts sufficient to assert an equal protection violation, Plaintiff nevertheless may have presented facts supporting violation of his Fourteenth Amendment rights. Moving Defendants have offered no arguments explaining that Plaintiff failed to allege a violation of a fundamental right, such that he was not entitled to procedural due process. Moving Defendants also have not asserted in their motion papers that Plaintiff failed to allege a violation of his substantive due process rights. Since "defendant bears the burden of showing no claim has been stated," Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Gould Elec. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000)), Plaintiff's Section

---

[5] This Court acknowledges, however, that a plaintiff may identify a "particular inmate sub-group" sufficient to challenge a prison policy on equal protection grounds. Id. at 263-64. Even with a liberal construal of the Complaint, this Court has not been able to identify any such allegations raised by Plaintiff.

1983 claim for violation of the Fourteenth Amendment shall not be dismissed.

F.    **Dismissal of Plaintiff's Claim for Punitive Damages is Not Appropriate**

Punitive damages are available in a Section 1983 action where the "defendant's conduct is shown to have been motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); see also Bennis v. Gable, 823 F.2d 723, 734 (3d Cir. 1987). "Punitive damages are awarded in the jury's discretion to punish [the defendant] for his outrageous conduct and to deter him and others from similar conduct in the future." Smith, 461 U.S. at 54.

Moving Defendants argue that Plaintiff has not alleged that they acted with an evil motive or callous indifference towards his rights, and that Plaintiff's various grievances were addressed by ADTC personnel. However, Plaintiff alleges that his concerns were not addressed, despite his repeated complaints and worsening ailments. Plaintiff's allegations are sufficient to survive a motion to dismiss his request for punitive damages.

G.    **Plaintiff Has Alleged Facts Sufficient to Seek Compensatory Damages**

Damages are available under Section 1983 for proven violations of constitutional rights that have caused actual compensable injury. Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000). Moving Defendants argue that Plaintiff has not alleged any actual injury. This Court disagrees.

Plaintiff alleges that his respiratory ailments have been significantly worsened by his exposure to tobacco smoke, and that he has developed other symptoms, such as "severe headaches, changing of [his] voice, lots of mucus, with dust and lint, watery eyes, [and] uncontrollable coughing which at times [made his] back hurt." (Compl. 8.) Plaintiff also alleges

19

that his pending cases have been negatively affected by Moving Defendants' alleged mistreatment of Plaintiff's mail.  (Id. at 10.)  This Court finds that these alleged facts are sufficient for Plaintiff to seek compensatory damages.

## IV.  CONCLUSION

For the reasons stated above, the motion to dismiss shall be granted, in part, and denied, in part.  The Section 1983 claims raised against Moving Defendants in their official capacities shall be dismissed.  In addition, the Section 1983 claims against Zulima Farber warrant dismissal.  Last,  Plaintiff's Section 1983 claim based on violation of the Fifth Amendment shall be dismissed.  Plaintiff's remaining claims still survive.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: May 12, 2008