<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY</u>

| | |
|---|---|
| LEWIS I. HAGAN, PRO SE | : |
| Plaintiff, | : |
| v. | : Civil Action No. 06-4491 (JAG) |
| GRACE ROGERS, et al., | : OPINION |
| Defendants. | : |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motion to dismiss the First Amended Complaint ("First Am. Compl.") by defendants Dr. John Hochberg, M.D. ("Dr. Hochberg"), and Correctional Medical Services, Inc. ("CMS," and, collectively with Dr. Hochberg, the "Moving Defendants"), pursuant to FED. R. CIV. P. 12(b)(6). For the reasons set forth below, this motion shall be granted.

**I.  FACTS**

<u>Pro</u> <u>se</u> plaintiff Lewis I. Hagan ("Plaintiff") is an individual residing at 2604 West Main Street, Millville, New Jersey. (First Am. Compl. at p. 3.) During the time period in which the relevant events are alleged to have occurred, Plaintiff was a prisoner at the Adult Diagnostic and Treatment Center ("ADTC") in Avenel, New Jersey. (<u>Id.</u>) CMS is a corporation, with offices for service of process located in Avenel, New Jersey. (<u>Id.</u> at p. 8.) Dr. John Hochberg is an individual and the resident physician at the ADTC. (<u>Id.</u>) Dr. Hochberg is employed by CMS.

(Id.)

In his First Amended Complaint, Plaintiff alleges that Defendants violated his Constitutional rights due to medical indifference. (Id. at p. 9.) Plaintiff states that on or about June 23, 2005, when he arrived at the ADTC, he informed the medical staff that he suffered from indoor and outdoor allergies. (Id. at p. 10.) Specifically, Plaintiff informed a nurse that he was allergic to dust, cigarette smoke, pollen, and ragweed. (Id.) Plaintiff states the nurse told him that she could only list two of his allergies. (Id.)

Initially, Dr. Grace Melendez examined Plaintiff and he (Plaintiff) explained to her that his prior doctor had prescribed Flonase to treat his allergies. (Id.) Dr. Melendez replied, while smirking, that there was no way he would receive Flonase at the ADTC. (Id.) Instead, Dr. Melendez prescribed Benedryl, which did not help his cough, teary eyes, and gagging on mucus. (Id.) Plaintiff would spend a half an hour or more spitting up each morning and throughout the day. (Id.) Both the nurse and Dr. Melendez told Plaintiff that there was nothing that could be done about the smoking that goes in the building. (Id. at p. 11.) Plaintiff avers that the smoke was very thick and hovering in the bathroom and on the ramp, which forced him to cover up his face, especially his mouth. (Id.)

On August 22, 2006, Plaintiff met with Dr. John Hochberg and informed him of the cigarette smoke problem. (Id.) Dr. Hochberg told him that he was aware of the problem but there was nothing he could do about it. (Id.) Dr. Hochberg agreed to provide Plaintiff with Flonase, which Plaintiff had previously been told he would not be able to obtain. (Id.) On September 21, 2006, Dr. Hochberg documented Plaintiff's complaints about the second hand smoke aggravating his allergies. (Id.)

Plaintiff also informed staff when he first arrived at ADTC on June 23, 2005 that he suffered from a back injury, which occurred while he was at the Middlesex County Adult Correctional Facility. (Id.)  On June 29, 2005, Plaintiff inquired about the sick call slip he had submitted after his initial visit on June 23, 2005. (Id.)  Plaintiff went to medical to inquire about the chronic back pain he had been experiencing. (Id.)  On September 9, 2005, Plaintiff submitted additional forms to inquire about the medication he had been taking. (Id.)  Plaintiff also asked about sneakers and boots, which he had not received but wanted, because he believed that they would lessen the back pain he suffered. (Id.)  Plaintiff also discussed the second hand smoke he had been suffering from while living on the wing with the doctor and nurse and explained that he felt better when he was off the wing and in medical because the air is circulated there. (Id. at p. 12.)  On October 11, 2005, Plaintiff again complained about the chronic cough he suffered from and also inquired about why he still had not received the boots and sneakers that he had asked for earlier. (Id.)

By November 2, 2005, Plaintiff still suffered from back pain and requested additional medication. (Id.)  That same day, Plaintiff also complained about the numbness in his hand as well as sharp pain he was experiencing in his elbow. (Id.)  Plaintiff pointed out that he was still having back pain and still had not received the boots and sneakers he had requested. (Id.)  Plaintiff also explained to the nurse and the doctor that his right eye was red and his vision was blurry in the right eye due to second hand smoke that hovered in the bathrooms and [in] the dorms. (Id.)  Plaintiff states that the doctor did not document his complaints in his records and he was told repeatedly that he would just have to deal with it. (Id.)

On July 12, 2006 Plaintiff informed Capt. Heaney that he still had not received the boots

and sneakers for which Plaintiff had already been charged. (Id. at p. 25.) Plaintiff stated that Felicia from medical told Plaintiff during a hospital visit that his boots and sneakers had been in since September 2005. (Id.) Plaintiff was asked by Capt. Heaney if he had proof that he had paid for the boots and sneakers and Plaintiff stated that he had proof in the form of his statement of account. (Id.)

On August 21, 2006, Plaintiff complained that he was exposed to cigarette smoke, dust, lint, and poor ventilation, all of which made his allergies more severe than they ever had been before in his entire life. (Id. at p. 12.) Plaintiff also continued to expectorate mucus and to cough every morning for at least an half an hour and his eyes became watery from gagging on the mucus. (Id.) Plaintiff also complained about having "splitting" headaches everyday. (Id.) Plaintiff registered numerous additional complaints with medical staff regarding his allergy to second hand smoke and his chronic back pain during the period from August 2006 to February 2007. (Id. at pp. 12-13.)

On September 7, 2006, Plaintiff went to medical on sick call. (Id.) Plaintiff explained that due to smoking on the unit, and especially in the bathroom, he was now experiencing acid reflux. (Id.) Plaintiff told the nurse that he had never experienced acid reflux before. (Id.) Plaintiff told the nurse that all the coughing he was doing due to the second hand smoke was causing bad headaches and was aggravating his back injury. (Id.)

Plaintiff again inquired about the boots and sneakers for his back injury and was told by a different nurse that the medical department no longer writes slips for the release of sneakers and boots. (Id.) Plaintiff was told that it was the responsibility of the property room to release sneakers and boots. (Id.) Plaintiff made the following requests: he asked for additional

medication for his allergies on September 26, 2007; he requested more medication for his back pain which had been aggravated by violent coughing from exposure to second hand smoke; he asked for a sponge mat for his bed to relieve him from his sleepless nights; he again, inquired about the boots and sneakers that he had not received to alleviate his back pain. (Id. at pp. 12-13.)

On October 31, 2006, Plaintiff inquired about the Flonase that Dr. Hochberg said he would receive. (Id.) Plaintiff also stated that he did not want to take prednisone anymore after learning of the drug's side effects, about which Plaintiff claims he never had been informed. (Id.)

On November 25, 2006, Plaintiff complained again about his allergies. (Id.) Plaintiff stated his throat became raw from expectorating mucus and had blood it in. (Id.) Plaintiff stated that he continued to gag and cough at night and during the day and suffered from constant headaches and chest pain. (Id.) Plaintiff described having difficulty sleeping and concentrating. (Id.) By January 27, 2007, Plaintiff continued to complain about the cigarette smoke aggravating his allergies. (Id.) Plaintiff's eyes were red and teary and he continued to cough up mucus. (Id.) His throat was raw from coughing and his vision was blurry. (Id.)

Plaintiff alleges that Moving Defendants also refused to respond to his concerns about being housed with inmates with contagious diseases. (Id. at p. 26.) Plaintiff claims that on August 20, 2006, he wrote remedy forms complaining about being housed with an inmate, William Weiss, who suffers from full-blown AIDS. (Id.) According to Plaintiff, Weiss has on more than one occasion allowed bloody tissue to fall from underneath his clothing down his pants leg. (Id.) Plaintiff states that the inmate has a bio-hazard bag in which to dispose of waste.

5


(Id.)  Although admonished to wear a mask when he coughs, Weiss seldom does.  (Id.)

On September 21, 2006, Sgt. Knapp came to speak to Plaintiff regarding the smoking issue and the inmate, William Weiss.  (Id.)  Sgt. Knapp told Plaintiff that there was nothing that could be done about Weiss and that custody staff and administration were aware of Weiss's condition and conduct.  (Id.)  Sgt. Knapp promised to speak to inmate Weiss about the problem.  (Id.)

Plaintiff also states that there are other inmates to whom he has been exposed who suffer from infectious conditions such as scabies.  (Id.)  Plaintiff claims that administration took numerous months to acknowledge the scabies outbreak and to do something about it.  (Id.)

Plaintiff filed the First Amended Complaint against Moving Defendants, pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that Moving Defendants violated the First, Eighth, and Fourteenth Amendments of the Constitution of the United States and the New Jersey Smoke Free Act (the "NJSFA"), as well as N.J. Admin. Code §§ 10A:16-2.21 and 10A:22-2.7.

## II.  STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Twombly, 127 S. Ct. at 1959.  "Factual allegations must

be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id.

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  That is, a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1960 (abrogating Conley, 355 U.S. 41). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).  While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  See W. Penn Power

7

Co., 147 F.3d at 259; 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357.  Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment.  FED. R. CIV. P. 12(b).

The court's review of the sufficiency of a pro se complaint, "however inartfully pleaded," is less stringent than its review of pleadings prepared by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  A court must assume a pro se plaintiff's factual allegations are true and construe his claim liberally.  See Nietzke v. Williams, 490 U.S. 319, 330 n.9 (1999); Roman v. Jeffes, 904 F.2d 192, 197 (3d Cir. 1990).

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."  Ashcroft v. Iqbal et al., 129 S.Ct. 1937, 1950 (2009).

### III.  ANALYSIS

After liberally construing the First Amended Complaint, this Court finds that Plaintiff has raised a Section 1983 claim for violation of his First, Eighth, and Fourteenth Amendment rights.  Plaintiff also alleges violations of the New Jersey Smoke Free Act (the "NJSFA") by Moving Defendants.[1]

---

[1] Plaintiff pleads a cause of action under the "New Jersey Clean Air Act N.J.S.A. 26.3D 55-63 [sic]."  (First Am. Compl. at p. 2.)  However, there is no statute entitled the New Jersey Clean Air Act.  Since the citation provided is that of the New Jersey Smoke Free Act (the "NJSFA"), and at least one of Plaintiff's claims concern exposure to second-hand smoking, this Court shall interpret the First Amended Complaint to allege a violation of the New Jersey Smoke

### A. Plaintiff's Eighth Amendment Claim against Dr. Hochberg and CMS for Deliberate Medical Indifference is flawed and must be dismissed

CMS is a private company that provides medical services to inmates, pursuant to a contract with the State of New Jersey. See Riggs v. Corr. Med. Serv., No. 03-2246, 2005 WL 2009920, at *8 (D.N.J. Aug. 18, 2005). A "private company that provides health services to [] inmates" may be held liable under §1983. Natale v. Camden County Corr. Facility, 318 F.3d 575, 578 (3d Cir. 2003).

Section 1983 liability, however, may not be imposed vicariously or under a theory of respondeat superior. Id. at 583. Rather, to sustain a §1983 claim against CMS, a plaintiff must show that "there was a relevant [CMS] policy or custom" that caused the alleged constitutional deprivation. Id. at 583-84. "To hold a supervisor liable under § 1983 for failure to supervise properly, 'the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice.'" Boyd v. Bergen County Jail, No. 07-769, 2007 WL 1695736, at *2 (D.N.J. June 7, 2007) (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001)). "The supervisory liability test can be met by (i) showing that the supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's, or (ii) showing that the risk of constitutionally cognizable harm was so great and so obvious that the risk and the failure of supervisory officials to respond will alone support finding that the four-part test is met." Id. (internal citations and quotations omitted).

---

Free Act.

Although CMS constitutes a "person," within the meaning of Section 1983, Plaintiff has not alleged sufficient facts to show that CMS, in its supervisory capacity, violated the Eighth Amendment. Plaintiff has not pointed to any specific policy that sanctions the CMS employees' actions outlined in the First Amended Complaint. Nor has Plaintiff shown that CMS was aware of, and thus indifferent to, the risks created by its employees' alleged actions. The absence of such facts prevents this Court from recognizing a Section 1983 claim against CMS, as a supervisor, for violation of the Eighth Amendment.

Moving Defendants also argue that Plaintiff failed to allege an Eighth Amendment violation because Plaintiff has not asserted that Moving Defendants were deliberately indifferent to his medical needs.

"The Eighth Amendment prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)). In Estelle v. Gamble, the Supreme Court held that a failure to provide adequate medical treatment to prisoners may constitute a violation of the Eighth Amendment. 429 U.S. 97, 104 (1976). To state a cognizable Eighth Amendment claim under Estelle, a prisoner must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle test, the objective component, the prisoner must show that his medical needs are serious. Estelle, 429 U.S. at 104. A medical need is serious if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County

Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

To satisfy the second prong, the subjective component, an inmate must show that the state actors acted with deliberate indifference to his serious medical need. Estelle, 429 U.S. at 105. "Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" Natale, 318 F.3d at 582 (quoting Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)). A prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs," and may not rest on allegations of negligence or malpractice. Estelle, 429 U.S. at 106.

The Third Circuit has found "'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F. 3d 192 (3d Cir. 1999).

Eighth Amendment liability is not limited to indifference to current serious medical problems; the risk of serious future harm to an inmate's health may also constitute a claim under the Amendment. Helling, 509 U.S. at 34 (rejecting the argument that "only deliberate indifference to current serious health problems of inmates is actionable under the Eighth Amendment."). Under Helling, to sustain a claim for unreasonable risk of future serious harm, plaintiff must still fulfill the objective and subjective elements necessary to prove an Eighth Amendment violation, with a slight variation on the objective component. Id. at 34-36.

Specifically, to satisfy the Eighth Amendment's objective prong, a plaintiff "must show that he himself is being exposed" to an unreasonable risk of serious harm. Id. at 35. In

11

particular, a court must conduct a "scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure" to a contagious illness. Id. at 36. A court must also "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone *unwillingly* to such a risk." Id. (emphasis in original).

Here, Plaintiff alleges that he has been forced to mingle with an inmate that suffers from full blown AIDS. This Court finds that Plaintiff fails to state a claim against Moving Defendants for violation of the Eighth Amendment. Plaintiff fails to establish that he has been exposed to an unreasonable risk of future serious harm by exposure to inmate William Weiss or that Moving Defendants are even responsible for his confinement with William Weiss.

The decision by prison officials to house Plaintiff in the same prison with individuals infected with HIV/AIDS is not, by itself, a violation of Plaintiff's Eighth Amendment rights. "Courts consistently have held . . . that confinement in the same cell as an HIV-positive inmate does not violate the Eighth Amendment. See Bolton, 992 F. Supp. at 628 (finding that inmate was not injured by exposure to HIV-positive inmate in double cell because HIV is not airborne or spread by casual contact)." Crocamo v. Hudson County Correctional Center, 2007 WL 1175753 at *6 (D.N.J. 2007).

Since HIV/AIDS is not spread through casual contact, Plaintiff cannot demonstrate that Moving Defendants have subjected him to an unreasonable risk of future serious harm. In Massick v. North Central Correctional Facility, 136 F.3d 580, 581 (8th Cir. 1998), the Court of Appeals for the Eighth Circuit held that sharing a cell with an HIV-positive inmate who was bleeding could subject a healthy inmate to a risk of harm: "Here, there is no doubt that placing

the HIV-positive inmate in the cell with Mr. Massick exposed the latter to a risk." Id.

Plaintiff Hagan does not allege that he was confined to the same cell with inmate William Weiss, while he was bleeding, but only that he and William Weiss were housed in the same prison. In the First Amended Complaint, Plaintiff states that prison officials were aware of inmate Weiss's condition, that they encouraged prophylactic measures such as asking William Weiss to wear a mask so that he would not cough on other inmates. Plaintiff states in his First Amended Complaint that Sgt. Knapp indicated to Plaintiff that he would discuss the situation with inmate Weiss.

Plaintiff also fails to plead facts which would establish Moving Defendants' authority over how inmates are housed. Moving Defendants argue that they have no authority over housing decisions regarding inmates and Plaintiff has pled no facts to the contrary. The facts of the First Amended Complaint do not support a finding of deliberate indifference to a risk of future serious harm to Plaintiff because of exposure to inmate William Weiss.

Plaintiff's claim that Moving Defendants have violated the Eighth Amendment by subjecting him to an unreasonable risk of future serious harm by exposure to inmates with scabies must also fail. Plaintiff states in the Complaint that prison officials took action to address the scabies outbreak, although Plaintiff suggests that he would have preferred that prison officials take action more quickly. Plaintiff also claims that Moving Defendants violated the Eighth Amendment when they failed to treat his back injury adequately. Plaintiff states that on numerous occasions he requested, and inquired about, receiving boots and sneakers to mitigate his back pain and that Moving Defendants' failure to provide him with the boots and sneakers he had requested evinced an indifference to his serious medical needs. Plaintiff concedes, however,

13

that he received medication for his back injury but stressed that he was not given the boots and sneakers when requested.

Plaintiff fails to state a claim for a medical indifference since the facts of Plaintiff's Complaint indicate that Dr. Hochberg and CMS did treat Plaintiff for his back injury.  The Supreme Court of the United States has indicated that although deliberate indifference to a prisoner's medical needs would give rise to a claim under § 1983 for violation of the Eighth Amendment this "does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105.  The Court stated that mere failure to treat a condition adequately is insufficient to support a claim for "deliberate indifference."  Further, as the Court specifically explained, "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Id. at 105-106.  "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Id.

Plaintiff has failed to allege acts or omissions on the part of CMS or Dr. Hochberg that would give rise to a cognizable claim under the Eighth Amendment.  Allegations that Moving Defendants failed to cure his back injury or that Dr. Hochberg prescribed medicines with side

14

effects, such as prednisone, do not prove deliberate indifference to Plaintiff's medical needs. Although such claims may more properly sound in medical malpractice, the Third Circuit has denied similar § 1983 claims of prisoners predicated on alleged violations of the Eighth Amendment due to deliberate medical indifference. See Johnson v. Watson, slip op., 2008 WL 5237261, at *1 (3d Cir. 2008) ("Allegations of medical malpractice are not sufficient to establish a constitutional violation. Id.  Furthermore, "mere disagreement as to the proper medical treatment" does not support a claim of an Eighth Amendment violation").

Furthermore, Plaintiff has not alleged facts sufficient to maintain a claim against Moving Defendants, with respect to his alleged exposure to second hand smoke.  Plaintiff has not pled any facts showing that Moving Defendants acted in a manner evidencing deliberate indifference to Plaintiff's serious medical needs.  The First Amended Complaint illustrates that Dr. Hochberg treated Plaintiff for his complaints associated with second hand smoke.  Plaintiff was prescribed Benydryl for his allergies and Dr. Hochberg promised to provide Plaintiff with his drug of choice, Flonase, which members of the CMS staff believed to be unavailable.

The facts of the First Amended Complaint demonstrate Dr. Hochberg's and CMS staff's attentiveness to Plaintiff's ailments.  Plaintiff indicated that his allergies improved when he spent time in the medical ward, which is further support for the Moving Defendants' argument that they acted to alleviate Plaintiff's medical condition.  Plaintiff cannot allege a violation of his Eighth Amendment rights based on Moving Defendants' attention to his second hand smoke exposure.  As Moving Defendants argue, neither Dr. Hochberg nor CMS medical staff were responsible for the second hand smoke Plaintiff was exposed to and Moving Defendants took steps to treat Plaintiff's allergies which had been aggravated by exposure to second hand smoke.

> **B.      Plaintiff Has Not Alleged Facts Sufficient to Support a Violation of the Fourteenth Amendment**

Moving Defendants assert that Plaintiff's Section 1983 claims relying on the Fourteenth Amendment must fail because he has not alleged facts showing that his liberty interest was infringed, or that he is a member of a protected class.

The Fourteenth Amendment of the Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV.  Due process rights are divided into two areas: substantive due process, and procedural due process.

Substantive due process stipulates that "a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are arbitrary, irrational, or tainted by improper motive, or by means of government conduct so egregious that it shocks the conscience[.]" Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000) (internal citations and quotations omitted).  "To prevail on a non-legislative substantive due process claim, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." Id. at 139-40.

Procedural due process, on the other hand, requires notice and a hearing to be given to any person that is deprived of a life, liberty, or property interest.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).

The Fourteenth Amendment also ensures that a person is not denied "equal protection of the laws**.**" U.S. CONST. amend. XIV.  The equal protection clause "does not require the state to treat all persons alike." Price v. Cohen, 715 F.2d 87, 91 (3d Cir. 1983).  "To establish a violation

16

of the equal protection clause, a plaintiff must show that the allegedly offensive categorization invidiously discriminates against the disfavored group." Id.

Moving Defendants correctly point out that Plaintiff failed to allege membership in a class or category of individuals experiencing discrimination at the hands of Moving Defendants. Prisoners, generally speaking, do not inherently constitute a suspect classification, and state regulations of prisoners are deemed "presumptively constitutional." Myrie v. Comm'r, N.J. Dept. of Corr., 267 F.3d 251, 263 (3d Cir. 2001).[2]  The First Amended Complaint focuses solely on the constitutional violations allegedly experienced by Plaintiff, and does not allege, expressly or impliedly, that the grievances occurred or endured due to Plaintiff's membership with a particular class of persons.

Plaintiff fails allege any facts, construed broadly, that could be interpreted as fashioning a due process claim of any type whether substantive or procedural.  This, together with Plaintiff's failure to raise an equal protection violation, requires this Court to dismiss Plaintiff's Section 1983 claim for violation of the Fourteenth Amendment.

### C.   Plaintiff Has Not Articulated A Violation of the First Amendment

Plaintiff's allegations against Moving Defendants, which focus on his exposure to second hand smoke and contagious diseases, do not support a violation of his First Amendment rights. A Section 1983 claim for inadequate medical care arises under either the *Eighth* Amendment, or the *Fourteenth* Amendment, depending on whether the state has secured a formal adjudication of

---

[2] This Court acknowledges that a plaintiff may identify a "particular inmate sub-group" sufficient to challenge a prison policy on equal protection grounds.  Id. at 263-64.  However, even with a liberal construction of the First Amended Complaint, this Court is not able to identify any such allegations raised by Plaintiff.

guilt against the plaintiff prior to his injury. Natale 318 F.3d at 580 (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)).

Although retaliation against Plaintiff for expressing his complaints about the medical care may amount to a First Amendment violation, see Glenn v. Barua, 252 F. App'x 493, 499 (3d Cir. 2007), Plaintiff has not alleged such action by Moving Defendants. Absent any facts showing such retaliation, Plaintiff's Section 1983 claim against Moving Defendants based on the First Amendment must be dismissed.

### D. New Jersey Smoke Free Act

Plaintiff's claim under the NJSFA must be dismissed because the statute does not provide for a private right of action. The NJSFA prohibits smoking in indoor public places and workplaces, with limited exceptions. See N.J. STAT. ANN. § 26:3D-58. However, the NJSFA provides no private right of action to plaintiffs aggrieved by a violation of its terms. N.J. STAT. ANN. § 26:3D-62(e) ("[T]here shall be no private right of action against a party for failure to comply with the provisions of this act."). As a matter of law, Plaintiff cannot articulate a viable claim against Moving Defendants under the NJSFA.

### IV. CONCLUSION

For the reasons stated above, Moving Defendants' motion to dismiss shall be granted. The Section 1983 claim raised against CMS for violation of the Eighth Amendment, and the Section 1983 claim against Dr. Hochberg for violation of the Eighth Amendment shall be dismissed. All Section 1983 claims raised against Moving Defendants for violation of the First and Fourteenth Amendments shall be dismissed. Finally, the state law claim for violation of the

New Jersey Smoke Free Act shall be dismissed against Moving Defendants.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: June 23, 2009