**NOT FOR PUBLICATION**



RECEIVED
DEC 20 2010
AT 8:30
WILLIAM T. WALSH —M
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LEWIS HAGAN,                              :

                                         : Civil Action No. 06-4491 (GEB)

            Plaintiff,           :

                                         :

                                         :

    v.                           :        **OPINION**

                                         :

GRACE ROGERS, et al.,                    :

                                         :

            Defendants.          :

**BROWN**, Chief Judge

Presently before the Court is Defendants Avenel Diagnostic & Treatment Center, Brown, Cathel, D'Amico, Delgado, Gonzales, Goodwin, Gottia, Hayman, Heaney, Knapp, Motto, N.J. Department of Corrections, Percoco, Rogers, Russo, Sullivan and Turncale's Motion for Summary Judgment. (Docket Entry No. 143.) Pro se Plaintiff Lewis Hagan ("Plaintiff") opposes the Motion. (Docket Entry No. 144.) The Court has decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the Court will grant Defendants' Motion.

### I. Facts and Procedural History

As required by Local Civil Rule 56.1, Defendants submitted their Statement of Material Facts Not in Dispute, however, Plaintiff did not file a responsive statement. Therefore, the Court will gather the relevant facts from the Complaint, Plaintiff's deposition testimony and Defendant's Local Civil Rule 56.1 statement of undisputed material facts and supporting exhibits. *See Athill v. Speziale*, 2009 WL 1874194, at *2 (D.N.J. June 30, 2009) (citing *Jordan v. Allgroup Wheaton*, 218

F.Supp.2d 643, 646 n. 2 (D.N.J.2002)) ("[w]here a nonmoving pro se litigant fails to file a responsive Local Civil Rule 56.1 statement of undisputed material facts, a court may draw the relevant facts underlying the claims from available sources such as the complaint, deposition testimony, the moving litigant's Local Civil Rule 56.1 statement of undisputed material facts and supporting exhibits"). Only the facts relevant to the pending motion are recited below.

Plaintiff Lewis Hagan, was an inmate formerly incarcerated at the Adult Diagnostic and Treatment Center ("ADTC") in Avenel, New Jersey. ADTC has been a smoke-free institution since July 2001, prohibiting smoking except in designated areas. (Defs.' Mot. Summ. J., Cardwell Decl. Ex. A.) Notice of this policy was disseminated to all staff members and inmates at ADTC in June 2001. (*Id.* at Exs. B and C.) Smoking is prohibited in all indoor sections of ADTC. (*Id.*) As part of the No-Smoking policy, inmates are subject to disciplinary action for violating the policy's mandates. (*Id.*) Specifically, inmates receive a formal disciplinary charge for disciplinary infraction .553, smoking where prohibited, in violation of N.J.A.C. 10A:4-4.1. (*Id.*) In December 2006, a memorandum was issued reminding all custody staff of the importance of enforcing the no smoking policy. (*Id.* at Ex. C.) From June 2005 through February 2007, the date in which Plaintiff filed his amended Complaint, at least forty-eight (48) disciplinary charges were issued to inmates at ADTC for .553, smoking where prohibited. (*Id.* at Ex. D.) Plaintiff asserted that he witnessed Defendants Sullivan, Gonzalez, Knapp, Motto, Russo, Percoco, Delgado, Gottia and SCO Gonzalez smoking in the prison on a different occasions, but provided no proof or names of witnesses. (Cardwell Decl. Ex. E,generally.) Plaintiff also admitted that he never filed any institutional remedy form complaining of the alleged smoking on the unit by these particular Defendants. *(Id.)*

As to Plaintiff's allegations about his legal mail, beginning on October 17, 2001, all incoming mail to ADTC was ordered to be opened before distribution. (Cardwell Decl., Ex. F.) All mail, including inmate legal mail, was to be sorted and opened at "an outside temporary mailroom utilizing hazardous material precautions" due to "the Anthrax concern." (*Id.*) All legal mail was to be opened and inspected for contraband, but the contents were not to be read or censored by the inspecting officer. (*Id.*) The inmate population was advised of the new legal mail procedure by memorandum dated October 22, 2001. (*Id.*) On September 29, 2006, ADTC returned to the "pre-9/11" procedure in which legal mail is opened with the recipient present. (Cardwell Decl., Exs. G and H.) On November 13, 2006, Defendant Rogers confirmed that the mailroom was using the appropriate procedure regarding legal mail and advised that the return address on all Certified, FedEx and UPS mail be checked to determine whether it is legal mail. (Cardwell Decl., Ex. I.) Plaintiff admitted that he suffered no actual damage, as a result of his legal mail being opened or missing. (Cardwell Decl., Ex. E at 52:10-56:25.) Though his legal filings may have been delayed, the matters were resolved and he was able to settle his cases. (*Id.*)

Plaintiff also alleged that he suffered retaliation by Defendant Turncale. (*Id.* at 112:17-120:24.) Plaintiff stated that these allegations were investigated and no institutional infractions resulted against Turncale. (*Id.*) Plaintiff alleged that Turncale called him "n*****" and threatened him. (*Id.*) Plaintiff alleged that these threats were made by Turncale in order to stop Plaintiff from filing remedy forms. (*Id.*) Plaintiff stated that he was in fear of filing remedy forms due to Turncale's alleged statements. (*Id.*) However, Plaintiff admitted that he continued to file remedy forms after being confronted by Turncale. (*Id.* at 120:7-120:24.) By Plaintiff's own admission, the allegations were investigated by both the Special Investigation Division of the prison

3

and the prosecutor's office in Woodbridge and no charges were filed against Turncale. (*Id.* at 112:17-120:24.)

Several parties have been dismissed from the case since Plaintiff filed his first Complaint and the only remaining Defendants are those who bring the instant motion. In their motion, Defendants argue that summary judgment should be granted in this case for eight reasons: the allegations in the amended complaint are improperly based solely upon a theory of *respondeat superior*; the ADTC is a smoke-free institution and the no smoking policy is regularly enforced; defendants are entitled to qualified immunity; plaintiff has not alleged facts to support a claim of a violation of his substantive or procedural due process rights; there is no evidence that defendants acted with "evil motive" or "callous indifference" to a federally protected right to assert a claim for punitive damages; plaintiff cannot prove any injuries to support a claim for compensatory damages; plaintiff has failed to prove that Defendant Turncale retaliated against Plaintiff; and Plaintiff failed to file a Notice of Tort Claim.

## II. Discussion

### A. Legal Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996); *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)(noting that no issue for trial exists

unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its

favor). In deciding whether triable issues of fact exist, the Court must view the underlying facts and

draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231,

236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this
> rule, an adverse party may not rest upon the mere allegations or denials of the
> adverse party's pleading, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is a
> genuine issue for trial. If the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The rule does not increase or decrease a party's ultimate burden of proof on

a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury

must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S.

at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported

issues identified in its motion, except those for which the nonmoving party has provided evidence

to show that a question of material fact remains. *See Celotex*, 477 U.S. at 324. Put another way,

once the moving party has properly supported its showing of no triable issue of fact and of an

entitlement to judgment as a matter of law, for example, with affidavits, which may be

"supplemented . . . by depositions, answers to interrogatories, or further affidavits," *Id.* at 322 n.3,

"its opponent must do more than simply show that there is some metaphysical doubt as to the

material facts." *Matsushita*, 475 U.S. at 586 (citations omitted); *see also Anderson*, 477 U.S. at

5

247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); *Anderson*, 477 U.S. at 249; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine issue of material fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, *New Jersey Federal Practice Rules 192* (2006 ed.)(citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" *Id.* at 193 (citations omitted). However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." *Id.* (citation omitted).

**B.** **Analysis**

    **1.** **Second-Hand Smoke Claim**

Plaintiff alleges an Eighth Amendment violation by the ADTC, claiming unconstitutional

conditions of confinement. In all claims alleging cruel and unusual punishment under the Eighth

Amendment, an inmate must show both an objective and a subjective component. *See Wilson v.*

*Seiter*, 501 U.S. 294, 298 (1991). Thus, the inmate must show that the conditions alleged, either

alone or in combination, deprived him of "the minimal civilized measure of life's necessities," such

as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *See Rhodes v.*

*Chapman*, 452 U.S. 337, 347-48 (1981). To the extent that certain conditions are "restrictive" or

"harsh," they are deemed to be part of the penalty that criminal offenders pay for their offenses

against society. *See id.* at 347. Only "extreme deprivations" are sufficient to make out an Eighth

Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Additionally, the inmate must

fulfill the subjective element by demonstrating that prison officials knew of such substandard

conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to

inmate health or safety." *Ingalls v. Florio*, 968 F. Supp. 193, 198 (D.N.J. 1997).

According to the record of this case, the ADTC has been a smoke-free institution since July

of 2001. (Cardwell Decl., Ex. A.) There is a no-smoking policy in effect, said policy being provided

to all staff members and inmates at ADTC in June of 2001. (Cardwell Decl., Exs. B&C.) Smoking

is permitted in outdoor areas only, and inmates are permitted to purchase tobacco products from the

commissary to use in these outside areas. (*Id.*) Inmates are not permitted to smoke indoors,

according to the policy, and are subject to disciplinary action for doing so. (*Id.*) If inmates are found

smoking indoors in violation of the no-smoking policy, they receive a formal disciplinary charge for

disciplinary infraction .553, smoking where prohibited, in violation of N.J.A.C. 10A:4-4.1. (*Id.*) Staff was reminded of the importance of the no-smoking policy in a memorandum dated December 2006. (Cardwell Decl., Ex. D.) Defendants provided proof that between June 2005 through February 2007, when Plaintiff filed his complaint, at least 48 disciplinary charges were issued to inmates at ADTC for violation .553. (*Id.*)

Plaintiff also asserted that he witnessed Defendants Sullivan, Gonzalez, Knapp, Motto, Russo, Percoco, Delgado, Gottia and SCO Gonzalez smoking in the prison on a different occasions, but provided no proof or names of witnesses. (Cardwell Decl. Ex. E, generally.) Plaintiff also admitted that he never filed any institutional remedy form complaining of the alleged smoking on the unit by these specific Defendants. (*Id.*) He argues that exposure to environmental tobacco smoke ("ETS") is harmful and a health risk and said smoke has exacerbated his allergies. (Pl.'s Opp. 18.) Plaintiff filed numerous remedy forms with regard to the smoking in the building, but did not name any Defendants specifically by name in those remedy forms. (Cardwell Decl., Ex. E, 12:7-13:4).

Defendants' statements of material facts and Plaintiff's allegations in his complaint address different aspects of the claim: Defendants note that the no-smoking policy is in effect and being enforced; Plaintiff asserts that he is being exposed to environmental tobacco smoke ("ETS") which is damaging to his, and everyone's health and that the Department of Corrections should cease the selling of tobacco products. Plaintiff does not dispute Defendants' facts that there is a no-smoking policy which is being enforced; albeit, Plaintiff notes that the violation of the policy is what is causing him harm.

However, applying the requisite standard for violations of the Eighth and Fourteenth Amendments, Plaintiff has not demonstrated deliberate indifference. Plaintiff has not shown that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." The record of this case reveals quite the opposite: that the defendants were active in disciplining offenders for smoking. Memos were sent to inmates and staff concerning the smoking ban. Although the system may not be foolproof in that inmates and staff may have violated the policy, there has been no deliberate indifference to this issue by ADTC officials.

Thus, as a matter of law, Plaintiff has not demonstrated a violation of the Eighth Amendment.

## 2.    Legal Mail Claims

Plaintiff complains of his legal mail being opened outside of his presence.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. *See Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. *See Procunier v. Martinez*, 416 U.S. 396, 419 (1974), overruled on other grounds, *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989); *see also Peterkin v. Jeffes*, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In *Bounds v. Smith*, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries

or adequate assistance from persons trained in the law."  The right of access to the courts is not,

however, unlimited.  "The tools [that *Bounds*] requires to be provided are those that the inmates need

in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of

their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and

perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S.

343, 355 (1996) (emphasis in original).

It is long established that in order for Plaintiff to establish a denial of access claim based on

interference with his legal mail, he must demonstrate that he suffered an actual injury as a result of

Defendants' denial of his right to access the courts.  "The requirement that an inmate alleging a

violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a

constitutional principle that prevents courts of law from undertaking tasks assigned to the political

branches." *Casey*, 518 U.S. at 349.  In *Casey*, the Supreme Court stipulated that an inmate can only

establish "actual injury" where his alleged hindered legal action concerned a direct or collateral

attack upon his sentence, or a challenge to his conditions of confinement:

> [i]n other words, *Bounds* does not guarantee inmates the wherewithal to transform
> themselves into litigating engines capable of filing everything from shareholder
> derivative actions to slip-and-fall claims.  The tools it requires to be provided are
> those that the inmates need in order to attack their sentences, directly or collaterally,
> and in order to challenge the conditions of their confinement. Impairment of any
> other litigating capacity is simply one of the incidental (and perfectly constitutional)
> consequences of conviction and incarceration.

*Id.* at 355.

Prisoners, however, may establish a violation of the First Amendment without establishing

an actual injury where there is a pattern and practice of opening properly marked incoming mail

outside an inmate's presence.  As the Third Circuit has stated, "nothing in the reasoning of *Casey* or

*Oliver* [*v. Fauver*, 118 F.3d 175 (3d Cir. 1997)] suggests that a prisoner alleging that officials have opened his legal mail outside of his presence and thereby violated his First Amendment rights need allege any consequential injury stemming from that violation, aside from the violation itself." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006).

Thus, inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; an inmate's constitutional right to send and receive mail may be restricted for legitimate penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 89 (1987). A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation. *See Morgan v. Montayne*, 516 F.2d 1367 (2d Cir. 1975). But, the assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim. *See, e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir. 1996); *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304 (7th Cir. 1993). "[A] pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech. Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), implied overruling on other grounds recognized in *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997). A policy of opening legal mail outside the presence of the inmate violates the inmate's First Amendment right to freedom of speech, and is not reasonably related to a prison's legitimate penological interest in protecting health and safety of prisoners and staff. *See Jones v. Brown*, 461 F.3d 353 (3d Cir. 2006).

"Qualified immunity shields government officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dancy v. Collier*, No. 07-4329, 2008 U.S.App. LEXIS 3693, at \*5, 2008 WL 449732 (3d Cir. Feb. 20, 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The inquiry into the applicability of qualified immunity is twofold: (1) whether the plaintiff demonstrated the deprivation of a constitutional right, and (2) whether that right was established at the time of the alleged deprivation." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "This immunity is broad in scope and protects all but the plainly incompetent or those who knowingly violate the law." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir.2007) (quoting *Couden v. Duffy*, 446 F.3d 483, 501 (3d Cir.2006) (Weis, J. dissenting)).

According to documents submitted by Defendants, from October 2001, until September of 2006, the ADTC was opening legal mail outside of the presence of the inmates due to concerns about hazardous materials and contamination. (Cardwell Decl., Ex F.) In September of 2006, the opening of legal mail was ceased, and the procedure for handling legal mail returned to pre-September 11, 2001 policy. (Cardwell Decl., Exs. G&H.) According to his Complaint, Plaintiff alleges that his legal mail was opened outside his presence several times in 2006, prior to the policy returning to pre-September 11, 2001. (Compl. ¶37.) In Plaintiff's deposition, he states that his legal mail was opened outside of his presence, in violation of the policy that was re-instated in September 2006. (Cardwell Decl., Ex E, 45:1-56:25.) Plaintiff estimates that his mail was opened outside his presence about "five or six times additional times" after the policy was changed. (*Id.* at 45:15-20.) Plaintiff also alleges that on several occasions, his legal mail was not sent out and he did not receive legal mail.

12

(*Id.* at 47:1-56:25.) As a result of the violations of the mail policy, Plaintiff stated that his divorce case was delayed and a filing to the New Jersey State Appellate Court was never received by the Court. (*Id.* at 55:3-56:25.) However, Plaintiff was unable to recall any damage that resulted other than delay in obtaining his divorce. He did not recall the result with the document for the Appellate Court. (*Id.*)

Here, the record is clear that the policy was changed back to pre-September 11, 2001 procedures in September 2006. Prior to that, the policy in place mandated that mail be opened outside the presence of inmates. Though that policy was ultimately overturned in *Jones v. Brown*, 461 F.3d 353 (3d Cir. 2006), prior to that holding, it would not have been clear to the prison officials that the policy was unconstitutional. Therefore, Defendants are entitled to qualified immunity on Plaintiff's claims of opening his mail outside his presence which arose prior to holding in *Jones*.

Plaintiff appears to allege in his Complaint four specific incidents of his legal mail being opened after the policy was changed back to pre-9/11 procedures in October 2006. Since the policy was changed at the end of September 2006, presumably there was a period of adjustment, and those incidents were a part of that adjustment. Plaintiff's only other alleged incident of opening mail occurred in January 2007 and in that instance, in the response section of the remedy form, a Corrections Officer took responsibility for inadvertently sending the mail to the medical department where it was opened by civilian staff. Further, by Plaintiff's own admission, there were ten to twenty times after the policy was repealed that Plaintiff's mail was opened in his presence. (Cardwell Decl., Ex E, 47:15-20.) Plaintiff admits in his deposition that he spoke to defendant Sergeant Brown about the problems with his mail, and Sgt. Brown advised that he would "talk to his people" to ensure that it didn't happen again. Further, Defendants state in their material facts that as of November 13, 2006, when the mail policy was changed back to pre-9/11 procedures, the legal mail

at the facility has been processed appropriately.  (Cardwell Decl, Ex. I.)  Plaintiff provides no material facts with regard to his mail claim, as he did not provide a statement of facts.

The record provided, and Plaintiff's deposition, taken together, do not disclose material facts at issue that need to be resolved at trial.  As a matter of law, Plaintiff has not shown a constitutional violation as he has not demonstrated actual injury or a pattern or practice of opening properly marked legal mail.  Therefore, while a pattern and practice of opening legal mail may infringe on an inmate's First Amendment rights, Plaintiff has not demonstrated such a pattern and practice, and the record of this case shows that Defendants' policy is constitutionally sound.

To the extent that Plaintiff alleges that he was overcharged for stamps, it is clear that a prisoner does not have "a constitutionally protected interest in buying stamps as cheaply as possible, as 'there is simply no legal basis for a demand that inmates be offered items for purchase at or near cost.'" *McCall v. Keefe Supply Co.*, 71 F. App'x 779, 780 (10th Cir.2003) (quoting *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir.1980)).  Therefore, this claim is dismissed.

**3. Retaliation**

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ...." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir.1990).  To prevail on a retaliation claim, plaintiff must demonstrate that: (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir.2000)); *see also Anderson v. Davila*, 125 F.3d 148, 160 (3d Cir.1997) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)); *Thaddeus-X v. Blatter*, 175 F.3d

378, 386-99 (6th Cir.1999), cited with approval in *Allah*, 229 F.3d at 225. However, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334.

In this case, it seems undisputed that Plaintiff had a constitutional right to file grievances. However, Defendants argue, and the Court agrees, that Plaintiff has not shown that he suffered any adverse action. Threats and verbal assaults, without more, do not constitute adverse action. *Gay v. City of Philadelphia*, 2005 WL 1844407, at *5 (E.D.Pa. August 02, 2005) ("[a]llegations that defendants...threatened to confiscate or destroy his legal materials, without more, fail to state a cause of action because plaintiff suffered no adverse action); *see also Hill v. Chalanor*, 128 Fed.Appx. 187, 189 (2d Cir.2005) (alleged threats made by prison guard defendant, "without any allegation that the latter carried through on those threats, did not constitute adverse action"); *Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir.2004) (prisoner must allege some sort of actual harm in a First Amendment retaliation claim); *Maclean v. Secor*, 876 F.Supp. 695, 698 (E.D.Pa.1995) ( "[i]t is well-established that verbal abuse or threats alone do not state a constitutional claim") (citations omitted); *Prisoners' Legal Ass'n v. Roberson*, 822 F.Supp. 185, 189 (D.N.J.1993) ("[v]erbal harassment does not give rise to constitutional violation enforceable under § 1983").

Plaintiff alleges that Defendant Turncale threatened him on several occasions and used racial slurs. However, Plaintiff also acknowledged in his deposition that nothing ever came of the threats that Defendant Turncale made. (Cardwell Decl, Ex. E, 118:20.) Therefore, Plaintiff did not suffer any adverse action. Further, Plaintiff continued to file his grievances after the alleged verbal threats

from Defendant Turncale.  As such, the Court will grant Defendant Turncale's Motion for Summary Judgment.[1]

### 4. Deliberate Indifference - Medical Boots and Inmates with Infectious Diseases

Plaintiff alleges that Defendants were deliberately indifferent to his medical need for boots and sneakers to alleviate his pain.  Plaintiff also alleges that Defendants were deliberately indifferent to the potential dangers to his health caused by being housed with an inmate with AIDS and scabies.

As discussed more fully in the Court's June 23, 2009 opinion dismissing Plaintiff's claims against Defendants Dr. John Hochberg, M.D. and Correctional Medical Services, Inc., the decision by prison officials to house Plaintiff in the same prison with individuals infected with HIV/AIDS is not, by itself, a violation of Plaintiff's Eighth Amendment rights.  "Courts consistently have held . . . that confinement in the same cell as an HIV-positive inmate does not violate the Eighth Amendment." *Crocamo v. Hudson County Correctional Center*, 2007 WL 1175753 at *6 (D.N.J. 2007) (quoting *Bolton*, 992 F. Supp. at 628 (finding that inmate was not injured by exposure to

---

[1]To the extent Plaintiff attempts to raise a claim of harassment, mere verbal harassment does not give rise to a constitutional violation. *See McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir.2001) (taunts and threats are not an Eighth Amendment violation); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir.1987) (vulgar language); *Rivera v. Goord*, 119 F.Supp.2d 327, 342 (S.D.N.Y.2000) (verbal harassment does not violate inmate's constitutional rights); *Prisoners' Legal Ass'n v. Roberson*, 822 F.Supp. 185 (D.N.J.1993); *Murray v. Woodburn*, 809 F.Supp. 383 (E.D.Pa.1993); *Douglas v. Marino*, 684 F.Supp. 395 (D.N.J.1988).  Racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983.  *See Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir.1997) (verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir.1985); *Shabazz v. Cole*, 69 F.Supp.2d 177, 200-01 (D.Mass.1999) ("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); *Haussman v. Fergus*, 894 F.Supp. 142, 149 (S.D.N.Y.1995); *Prisoners' Legal Association*, 822 F.Supp. at 187-189 & n. 3 (corrections officer's use of racial slurs did not amount to constitutional violation); *Wright v. Santoro*, 714 F.Supp. 665, 667 (S.D.N.Y.1989), aff'd, 891 F.2d 278 (2d Cir.1989); *Knop v. Johnson*, 667 F.Supp. 467 (W.D.Mich.1987), appeal dismissed, 841 F.2d 1126 (6th Cir.1988).  Threatening language coupled with the threatening use of a weapon and outrageous conduct by prison personnel may indicate a constitutional deprivation.  *See Douglas*, 684 F.Supp. at 398 (brandishing a butcher knife in close proximity to prisoner and threatening to kill him may amount to a constitutional violation); *see also Northington v. Jackson*, 973 F.2d 1518 (10th Cir.1992) (gun was put to prisoner's head).

Plaintiff does not indicate that there were any threatening gestures accompanying the racial slurs and verbal threats, nor does he allege that Defendant Turncale did anything other than verbally assault him.  As such, Plaintiff does not state a viable claim for harassment under the Eighth Amendment.

HIV-positive inmate in double cell because HIV is not airborne or spread by casual contact)). Since HIV/AIDS is not spread through casual contact, Plaintiff cannot demonstrate that Defendants were deliberately indifferent to an unreasonable risk of future serious harm.

Plaintiff's claim that Defendants have violated the Eighth Amendment by subjecting him to an unreasonable risk of future serious harm by exposure to inmates with scabies must also fail. Plaintiff acknowledges in the Complaint that prison officials took action to address the scabies outbreak, although Plaintiff suggests that he would have preferred that prison officials take action more quickly.

Plaintiff also claims that Defendants violated the Eighth Amendment when they refused to give him the sneakers and boots he requested. Plaintiff states that on several occasions he requested and inquired about, receiving said boots and sneakers to mitigate his back pain and that Defendants' failure to provide him with the boots and sneakers he had requested exhibited a deliberate indifference to his serious medical needs. Plaintiff did concede, however, that he received medication for his back injury but stressed that he was not given the boots and sneakers when requested. For the reasons set forth more fully in the Court's June 9th Opinion, Plaintiff fails to state a claim for a medical indifference since the facts of Plaintiff's Complaint indicate that Plaintiff received treatment for his back injury and any disagreement with his course of treatment would more properly sound in medical malpractice. Moreover, to the extent that Plaintiff is seeking to hold Defendants liable for the actions of Dr. Hochberg and Correctional Medical Services, the law is clear that *respondeat superior* is not an acceptable basis for liability under § 1983. *Id.* (citing *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981)).

### 5. Fourteenth Amendment

Plaintiff asserts a general claim under the Fourteenth Amendment. It does not appear that he alleges any facts specific to his Fourteenth Amendment claim.

Procedural due process requires notice and a hearing to be given to any person that is deprived of a life, liberty, or property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). To analyze a procedural due process claim, the first step is to determine whether one was deprived of a liberty or property interest protected by due process. *See Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Only if the answer is yes, is the second step, i.e., determining what process is due, necessary. *See Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

As this Court previously held in its May 12, 2008 Opinion, substantive due process stipulates that "a property interest that falls within the ambit of substantive due process may not be taken away by the state for reasons that are arbitrary, irrational, or tainted by improper motive, or by means of government conduct so egregious that it shocks the conscience[.]" *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (internal citations and quotations omitted). "To prevail on a non-legislative substantive due process claim, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Id.* at 139-40.

Plaintiff does not allege that he has been deprived of any process that he was owed. Further, for the reasons stated above, Plaintiff has not shown that he has been denied any property interest for arbitrary reasons or by conduct so egregious that it shocks the conscience. Moreover, as the Third Circuit recently held in *Betts v. New Castle Youth Development Center*, 621 F.3d 249 (3d Cir. September 13, 2010), under the rule "more specific provision" rule, "if a constitutional claim is

covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." (*Id.* at 8) (citing *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997) (clarifying prior holing in *Graham v. Connor*, 490 U.S. 386 (1989))).  As such, the Court will grant Defendant's Motion for Summary Judgment on Plaintiff's Fourteenth Amendment claims.

### III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted. An appropriate Order accompanies this Opinion.

_____

GARRETT E. BROWN, JR., Chief Judge
United States District Court

Dated: 12/16/10